NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1236

ARLAINE & GINA ROCKEY, INC.,

Plaintiff-Appellant,

v.

CORDIS CORPORATION,

Defendant-Appellee.

———————————————

DECIDED:  March 16, 2006

———————————————

Before MICHEL, <u>Chief Judge</u>, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

Arlaine & Gina Rockey, Inc. ("AGR") appeals from the district court's grant of summary judgment in favor of Cordis Corp. ("Cordis").  The district court found that AGR is not entitled to royalties under its licensing agreement with Cordis because the use of Cordis' accused device (the "Palmaz-Schatz" stent) is not covered by claim 2 of AGR's stent patent, U.S. Patent No. 4,641,653.  On July 1, 2002, AGR filed this action in the Circuit Court for Miami-Dade County, Florida, alleging breach of the licensing agreement, breach of an implied duty to commercialize, and breach of the duty of good faith and fair dealing.  The case was removed to federal court pursuant to 28 U.S.C.

§ 1441. The district court denied AGR's remand request but did certify the question for interlocutory review. This court denied AGR's petition for interlocutory review of the district court's refusal to remand to the state court. See Arlaine & Gina Rockey, Inc. v. Cordis Corp., 68 Fed. Appx. 185 (Fed. Cir. 2003). Subsequently, the trial court conducted a Markman hearing and issued a claim construction order. AGR then filed a motion for reconsideration of the claim construction while Cordis submitted a motion for summary judgment. The district court denied AGR's motion for reconsideration of the claim construction and granted summary judgment in favor of Cordis. AGR filed a timely appeal. For the reasons stated below, we affirm.

BACKGROUND

During the late 1970's, Dr. Arthur G. Rockey experimented with methods of treating problems with blood vessels and the gastrointestinal tract using medical devices called stents. From this research, he applied for and received United States Patent Nos. 4,501,264, 4,641,653, and 4,763,653 (collectively, "the Rockey Patents"), all of which he later assigned to AGR. The Rockey Patents cover various medical devices and procedures involving stents. This appeal concerns only Patent No. 4,641,653 ("'653 patent").

In 1995, AGR granted Cordis an exclusive world-wide license to the Rockey Patents, which included inter alia the right to sell devices, the use of which is protected by AGR's method claims. As compensation, Cordis agreed to pay AGR an advance or pre-paid royalty of two-million dollars and a 10% royalty on all related products sold exceeding twenty-million dollars. AGR claims that Cordis breached the license

05-1236                                           2

agreement by selling the accused device, the Palmaz-Schatz stent, without paying royalties thereon.

Claim 2 of the '653 patent is directed to a method for inserting a stent into a blood vessel, manipulating the stent into position, and expanding it to the full diameter of the vessel. The stent remains in place due to the frictional forces created by the expanded device against the blood vessel wall, and helps to maintain an open passageway in a diseased vessel.

Likewise, the Palmaz-Schatz stent is used in a similar manner. There are, however, important differences. The Palmaz-Schatz stent is a lattice-like cylinder that is delivered to a desired location within the blood vessel and then radially expanded by an internal balloon. The expanding balloon causes permanent deformation of the latticed-steel cylinder. The metal of the stent retains its new shape, just as a paper clip maintains its new shape after bending. The cylinder is, of course, an integral part of the stent.

In contrast, the '653 patent illustrates the use of a stent that has a different means of maintaining itself in a permanently expanded configuration. Rather than relying on mechanical deformation of a steel-lattice, the Rockey patent relies on the introduction of a slowly-hardening substance. In a typical embodiment this is a gel that cross-polymerizes and slowly increases in rigidity, until it sets in a permanently rigid conformation. These stents are typically referred to as "Gastra" stents.

Based on the claim construction, the district court found that the use of the Palmaz-Schatz stent does not infringe the '653 patent and that therefore no additional

royalties were due to AGR pursuant to the license. Thus, the district court granted summary judgment in favor of Cordis. AGR appeals this decision.

JURISDICTION

The Federal Circuit has exclusive jurisdiction over appeals from a district court's final decision when the "jurisdiction of that court was based, in whole or in part, on section 1338." 28 U.S.C. § 1295(a). Section 1338 provides that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a).

AGR premised its cause of action against Cordis on a licensing agreement, which is a matter of state contract law.[1] The court must determine whether or not jurisdiction is appropriate. See In re Compagnie Generale Maritime, 993 F.3d 841, 848 (Fed. Cir. 1993) (stating that courts can raise issues of subject matter jurisdiction sua sponte at any time). In order to prevail on its claim for royalties, AGR must establish entitlement under the contract. This court has jurisdiction under section 1295 when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988)). To prevail in its contract action for royalties, AGR must show that the use of Cordis' products was infringing the patent. Id. As a result, AGR's right to relief depends on the resolution of a substantial question arising under the patent law. Id. Therefore, this

---

[1] AGR alleges other counts as well, but these also involve issues of state law, and none would be sufficient to provide a basis for § 1338 jurisdiction. Thus, this case does not involve issues of supplemental jurisdiction under § 1367(a).

court has jurisdiction because the underlying cause of action arises under patent law. 28 U.S.C. § 1338(a).

DISCUSSION

At issue in this appeal is whether the use of the Palmaz-Schatz stent infringes the '653 patent. AGR argues that the district court erred by improperly importing limitations of the preferred embodiment into the claims in its claim construction and that under a proper construction, there exist genuine issues of material fact regarding infringement.

We review a grant of summary judgments de novo. Ethicon Endo-Surgery v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Summary judgment is applied when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Ethicon, 149 F.3d at 1315. Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Ethicon, 149 F.3d at 1315 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In order to determine whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the nonmoving party. Id.

Determining patent infringement is a two-step process consisting of the court construing the claims and then comparing the allegedly infringing device to the properly construed claims. See Research Plastic Inc., v. Fed. Packaging Corp., 421 F.3d 1290, 1295 (Fed. Cir. 2005). The first step, claim construction, is a matter of law, which we review de novo. Id. The second step is typically a factual question, which we review for clear error; "however, where the factual inferences are material to the grant of summary

05-1236                                            5

judgment, we review them to ascertain whether there is a genuine issue of material fact." Id.

A.    Claim Construction

To construe claims, we first consider the ordinary and customary meaning of the claim language. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). The claim's "ordinary and customary meaning" is the reading a person of ordinary skill in the art would give the claim at the time of the invention. Id. at 1313. The person of ordinary skill in the art should read the claim term "not only in the context of the particular claim in which the disputed terms appears, but in the context of the entire patent, including the specification." Id. Claim 2 of the '653 patent reads as follows:

> A method of treating an area of a body vessel, comprising the steps of:
> [1] introducing a catheter with a collapsed inflatable balloon and a collapsed sleeve encircling the balloon on its end into the vessel at a point remote from the area to be treated;
> [2] manipulating the catheter axially along the vessel to cause the balloon and sleeve to enter the area to be treated;
> [3] inflating the balloon by introducing fluid under pressure into the balloon through a tube of the catheter in a manner wherein the sleeve surrounding the balloon is radially expanded towards the wall of the vessel;
> [4] providing in the sleeve a material which increases in rigidity after expansion of said balloon;
> [5] maintaining said balloon in an expanded condition in the vessel while said sleeve increases in rigidity; and
> [6] thereafter removing the balloon and catheter from the vessel and allowing the sleeve to remain in the area to be treated

(emphases added, bracketed numbers added)

AGR argues that the district court's claim construction was not justified and urges us to adopt a different claim construction. The district court defined "providing in the sleeve a material which increases in rigidity after expansion of said balloon" to mean "supply[ing] in the sleeve a material that is separate and distinct from the sleeve itself."

It rejected AGR's argued-for construction that this limitation somehow means that the sleeve has been <u>pre-formed</u> with a material that increases in rigidity after the balloon expansion. Rather, the district court held that the limitation requires the addition of a material to the stent at some point in the process.

When interpreting the claims, we must read them "'in view of the specification, of which they are a part.'" <u>Phillips</u>, 415 F.3d at 1315 (quoting <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 978 (Fed. Cir. 1995) (<u>en banc</u>)). In interpreting the '653 claim, the district court considered the intrinsic evidence contained in the patent specification to determine the meaning of the term "provided in." AGR's argument that the sleeve has been pre-formed with the material that increases in rigidity is without merit. The written description establishes that if the inventor intended to claim that the material was part of the invention, he would not have used the term "providing." In a description of one of the preferred embodiments, the specification speaks of the "sleeve unit . . . <u>including</u> the ring balloons," which are intended to be filled with fluid, being "<u>provided</u> with sufficient radiopaque material . . . ." '653, col. 4, ll. 43-45 (emphasis added). Moreover, in another preferred embodiment, the specification speaks of the "sleeve space . . . <u>contain[ing]</u> a fluid plastic material . . . which is caused to become solidified . . . ," and "<u>introduc[tion]</u> into the sleeve space" of such material. <u>Id</u>, col. 6, ll. 22-26 (emphasis added). In short, the specification makes clear that in drafting his claims, when the patentee used the word "providing"—a word that like "introduc[ing]" or "supplying" denotes the addition of a separate substance into the stent—he did so deliberately, and not through an accident of quirky or idiomatic usage. This conclusion

can be drawn from the fact that when he meant to convey the preexistence of a material in the sleeve he used an appropriate verb, such as "contain[ing]." Id.

Similarly, when Dr. Rockey wanted to convey the idea "formed of a material" he so stated specifically. In a description of one of the embodiments, the patent states that the "balloon . . . is <u>formed</u> of any suitable plastic or rubber material." Id., col. 6, ll. 7-9 (emphasis added). In another example, the specification teaches that an "outer sleeve wall . . . may be <u>formed</u> of Dacron" and an "inner wall . . . may be <u>formed</u> of Teflon." Id., col. 6, ll. 16-17 (emphasis added). Finally, the patent teaches that "the sleeve . . . is preferably <u>formed</u> of relatively inelastic material." Id., col. 5, ll. 52-53 (emphasis added). Thus, Rockey used the term "formed of" throughout the patent, yet specifically claimed the method of "providing in" for the claim involving the material. Considering this intrinsic evidence, we agree with the district court's construction of the fourth claim limitation.

B.    Applying the Claim Construction to the Accused Device

In light of this claim construction, we hold that the district court did not err in finding that there is no genuine issue of material fact whether the use of the Palmaz-Schatz stent is covered by the '653 patent. The district court construed the method of "providing in . . . a material" to mean "supplying in . . . a material." The use of the Palmaz-Schatz stent does not satisfy this limitation. Unlike the material added in the method described in the '653 patent, the Palmaz-Schatz stent steel-cylinder lattice is <u>part of</u> the stent and is not "introduced" or "supplied." No reasonable jury could conclude otherwise. Therefore, use of the Palmaz-Schatz stent does not infringe the

'653 patent.  Thus, Cordis is not subject to royalty payments pursuant to the terms of the license agreement for the Palmaz-Schatz stent.

C.    Doctrine of Equivalents

Finally, we address AGR's doctrine of equivalents argument.  AGR asks this court to accept the proposition that the limitation of "providing . . . a material" is equivalent to a method in which no material has been provided in accordance with the required step.  This argument is without merit because the application of the doctrine of equivalents in this situation would vitiate the "providing in" limitation.  <u>Pfizer, Inc. v. Teva Pharms. USA, Inc.</u>, 429 F.3d 1364, 1379 (Fed. Cir. 2005).  AGR argues that the "provided in" limitation is extraneous, meaning that it has little significance to the patent.  Under the all-elements rule, however, there are no extraneous limitations.  <u>See</u> <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention . . . .").  Thus, the district court did not commit error.

Because the district court did not err in its claim construction and correctly compared the asserted claim with the accused device, we affirm.