DYK, Circuit Judge,
with whom GAJARSA and PROST, Circuit Judges,
join, dissenting from the denial of the petition for rehearing en banc.
I respectfully dissent from the court’s denial of rehearing en banc. As pointed out in Judge Prost’s panel dissent, this case presents an important question: whether, under the doctrine of equivalents, a patent claim’s scope can encompass a new and separately patented (or patentable) invention.
I
Siemens Medical Solutions USA, Inc. (“Siemens”) owns U.S. Patent No. 4,958,-080 (“'080 patent”), which claims positron emission tomography (“PET”) scanners comprising cerium-doped lutetium oxyorthosilicate (“LSO”) scintillator crystals. See Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1275 (Fed.Cir.2011). Siemens brought suit against Saint-Gobain Ceramics & Plastics, Inc. (“SainGGobain”) for patent infringement, claiming induced and contributory infringement based on SainGGobain’s sale of scintillator crystals to its customers who use the crystals in PET scanners. Id. at 1276. The question was whether the customers’ PET scanners directly infringed the '080 patent. The customers’ PET scanners did not fall within the literal terms of the '080 patent because SainGGobain’s crystals were composed of cerium-doped lutetium-yttrium orthosilicate (“LYSO”), which differs chemically from the LSO crystals in the '080 patent. Id. Siemens asserted infringement under the doctrine of equivalents, alleging that the 10% Y LYSO crystals in the accused product were equivalent to the '080 patent’s LSO crystals. Both the alleged equivalent crystals and a PET scanner containing those crystals, however, were separately claimed in U.S. Patent No. 6,624,420 (“'420 patent”), a subsequent patent licensed to SainGGobain. See '420 patent, col. 7 11.39GÍ3, col. 7 11.47-col. 8 11.2.
SainGGobain requested jury instructions aimed at preventing Siemens from capturing, under the doctrine of equivalents, the new invention covered by the '420 patent. Siemens, 637 F.3d at 1278, *1379 1283. The question was whether Siemens was required to establish that the alleged equivalent crystals and PET scanners were merely obvious variants of the '080 patent’s crystal and PET scanner. The requested jury instructions were refused, and the jury found infringement of the '080 patent under the doctrine of equivalents. A divided panel of this court affirmed. Id. at 1283-84. The panel majority explicitly rejected the premise that equivalents must be confined to obvious alternatives. While the majority recognized that finding an identity between insubstantiality and nonobviousness is “not illogical,” id. at 1279, it ultimately concluded that, “with regard to SainNGobain’s contention that equivalence is tantamount to obviousness, we disagree,” id. at 1281.
II
The theory of the doctrine of equivalents is that an inventor should receive protection for the full scope of his invention, even if the claim language does not literally cover it. The doctrine of equivalents is not designed to enable the patent holder to secure the rights to a new invention that the inventor did not create. In other words, the doctrine of equivalents allows the patent holder to secure only the rights to products or processes that reflect minor differences from the patent’s claims. To prove that an element of an accused product is an equivalent for the purposes of infringement, the patentee must prove that the feature is insubstantially different. See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39-40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 610, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). In my view, a product cannot be insubstantially different if it is nonobvious and separately patentable.
As this court stated in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 493 F.3d 1368 (Fed.Cir.2007), “[t]he theory of the doctrine of equivalents is that an applicant through the doctrine of equivalents should only be able to protect the scope of his invention, not to expand the protectable scope of the claimed invention to cover a new and unclaimed invention.” Id. at 1379 (internal citation omitted). A similar view was expressed by Judge Nies in Roton, who noted that “[a] substitution in a patented invention cannot be both nonobvious and insubstantial.” Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1128 (Fed.Cir.1996) (Nies, J., additional views). Though we did “not directly decide[]” in Festo “whether a device— novel and separately patentable because of the incorporation of an equivalent feature — may be captured by the doctrine of equivalents,” 493 F.3d at 1379, I think the answer is clear. In my view, just as the doctrine of equivalents cannot extend a patent’s scope to cover prior art, see Wilson Sporting Goods Co. v. David Geoffrey & Assocs., 904 F.2d 677, 684 (Fed.Cir.1990), it should not permit patents to be extended to cover new and nonobvious inventions.[1]
Moreover, where the purported equivalent is embodied in a subsequent patent, *1380 the finder of fact should afford a presumption of validity to the subsequent patent. Contrary to the panel majority’s suggestion, the Supreme Court did not hold to the contrary in Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929). There, the Court found a patent infringed under the doctrine of equivalents even though the accused device was claimed in a subsequent patent. Id. at 43, 50 S.Ct. 9; see Siemens, 637 F.3d at 1280. But the Court found that the equivalent was “merely a colorable departure from the [claimed] structure” and was a “close copy which [sought] to use the substance of the invention ... [to] perform precisely the same offices with no change in principle.” Sanitary Refrigerator, 280 U.S. at 41-42, 50 S.Ct. 9. The Court’s only reference to the subsequent patent was a single sentence stating: “Nor is the infringement avoided, under the controlling weight of the undisputed facts, by any presumptive validity that may attach to the [subsequent] patent by reason of its issuance after the [asserted] patent.” Id. at 43, 50 S.Ct. 9 (emphasis added). Evidently, the Court found that the “controlling weight of the undisputed facts” overcame the subsequent patent’s presumption of validity, not that the presumption of validity was irrelevant.
In short, a purported equivalent cannot be both insubstantially different and non-obvious, and in no event should the doctrine of equivalents permit a patent to capture another’s subsequent invention that is novel and nonobvious.[2] The majority’s contrary approach will deter innovation and hamper legitimate competition.[3]
For the foregoing reasons, I respectfully dissent.

. In his opinion concurring in the denial of the petition for rehearing en banc, Chief Judge Rader urges that the doctrine of equivalents must include after-arising technology. Op. at 1374 (Rader, C.J., concurring in denial of the petition for rehearing en banc). Our decisions have recognized that the doctrine of equivalents may sometimes capture after-arising technology where the original claims could have captured that technology by using more general claim language. For example, if a claim were to use the narrow term "clip" to describe an incidental aspect of the invention, the claim might be extended under the doctrine of equivalents to include all fasteners, including those subsequently developed. But this is a far cry from saying that a claim directed to a particular type of clip — i.e., where the invention in whole or in part is the *1380 clip itself — should cover after-arising and separately patentable fastening means.

. The panel majority agrees that, where an “alleged equivalent is claimed in a separate patent,” that fact may be "weighed by the fact-finder” when conducting the doctrine of equivalents inquiry. Siemens, 637 F.3d at 1280. But this approach still does not adequately prevent the doctrine of equivalents from being used to improperly extend patent claims to capture subsequent inventions that are novel and nonobvious.

. In his opinion concurring in the denial of the petition for rehearing en banc, Judge Lourie argues that the '080 patent was “in effect a dominant patent” and that “a patent does not grant a right to practice free from infringement liability.” Op. at 3 (Lourie, J., concurring in denial of the petition for rehearing en banc). Judge Lourie is correct that a "dominant patent" which includes an open-ended transition term such as “comprising” can prevent the practice of subsequent inventions that embody all of the dominant patent's elements plus additional elements. This case, however, does not involve a dominant patent. Here, the '420 patent’s point of novelty over the '080 patent is not that it claims an additional element, but rather that it claims a substitute element (LYSO) that is different in kind from an element claimed in the '080 patent (LSO). The doctrine of equivalents should not permit a patent to cover subsequent inventions which have replaced one or more of the patent's claimed features with nonobvious substitute elements, thereby creating a new invention not covered by the original patent's claims.